UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JEFFREY DELMORAL, on behalf of himself
individually and all other similarly situated,

        **MEMORANDUM AND ORDER**

    Plaintiff,        13-CV-242 (RRM) (SMG)

    - against -

CREDIT PROTECTION ASSOCIATION, LP,

    Defendant.
-----------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

    Plaintiff Jeffrey Delmoral brings this action against defendant Credit Protection Association, LP ("CPA"), alleging that a letter CPA sent to Delmoral violated various provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (the "FDCPA"). (*See* Compl. (Doc. No. 1).) Before the Court are Delmoral's motions for class certification and summary judgment, (Doc. Nos. 34, 35), and CPA's cross-motion for summary judgment, (Doc. No. 40). For the reasons set forth below, Delmoral's motions for class certification and summary judgment are DENIED, and CPA's motion for summary judgment is GRANTED.

## BACKGROUND

**1. Factual Background**

    The following facts are taken primarily from the parties' statements of material fact submitted pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, and are undisputed except where otherwise noted.

    CPA was in this case acting as a debt collector and attempting to collect home cable television debt from Delmoral on behalf of Time Warner of New York City ("Time Warner"). (Pl.'s Rule 56.1 Statement (Doc. No. 38) at ¶¶ 5–6; Def.'s Rule 56.1 Statement (Doc. No. 44) at

¶¶ 5–6.) CPA mailed three debt collection letters to Delmoral, each consisting of one sheet of paper with writing on the front and back. (Pl.'s Rule 56.1 Statement at ¶¶ 7–8; Def.'s Rule 56.1 Statement at ¶¶ 7–8.)

CPA mailed Delmoral the first collection letter, dated December 15, 2011 (the "December 15 Letter"), on or about December 19, 2011. (Pl.'s Rule 56.1 Statement at ¶¶ 9, 12; Def.'s Rule 56.1 Statement at ¶¶ 9, 12.) The front of that letter stated, in part: "The records of Time Warner of New York City indicate that your account in the amount listed above is seriously past due. . . . Credit Protection Association is a professional collection agency retained by Time Warner of New York City and is authorized to take all appropriate steps to collect this debt." (December 15 Letter (Doc. No. 1-1 at 1) at 2 (ECF Pagination); Pl.'s Rule 56.1 Statement at ¶¶ 10–11; Def.'s Rule 56.1 Statement at ¶¶ 10–11.) The back of the December 15 Letter contained the following validation notice:

> The Fair Debt Collection Practices Act requires that we, as the debt collector, inform you that: unless you, within thirty days after receipt of this initial notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed valid by the debt collector. If you notify the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of judgment against you and mail it to you. If requested in writing within thirty days, the debt collector will also provide you with the name and address of the original creditor, if different from the current creditor.

(December 15 Letter at 3; Pl.'s Rule 56.1 Statement at ¶¶ 10–11; Def.'s Rule 56.1 Statement at ¶¶ 10–11.) Delmoral asserts that he received the December 15 Letter on or about December 24, 2011, which CPA challenges on the basis that it ordered that the letter be sent on December 15, 2011. (*Compare* Pl.'s Rule 56.1 Statement at ¶ 13, *with* Def.'s Rule 56.1 Statement at ¶ 13.)

The second collection letter CPA sent to Delmoral was dated January 6, 2012 (the "Partial Payment Letter"), although the parties disagree as to when CPA mailed the letter.

(*Compare* Pl.'s Rule 56.1 Statement at ¶ 15, 18, *with* Def.'s Rule 56.1 Statement at ¶ 15, 18.) Delmoral asserts that he received the Partial Payment Letter on or about January 17, 2012, which CPA disputes, stating that it ordered the letter to be sent on January 6, 2012. (*Compare* Pl.'s Rule 56.1 Statement at ¶ 19, *with* Def.'s Rule 56.1 Statement at ¶ 19.) The Partial Payment Letter stated in part: "Thank you for your payment(s) and/or item return(s). This has been credited to your account leaving a balance of $[REDACTED]." (Partial Payment Letter (Doc. No. 1-1 at 4) at 5 (ECF Pagination).) The Partial Payment Letter did not contain a validation notice. (Pl.'s Rule 56.1 Statement at ¶ 17; Def.'s Rule 56.1 Statement at ¶ 17.) CPA asserts that Time Warner had instructed it to credit Delmoral's account $200 because of a payment made on or about January 6, 2012. (Def.'s Rule 56.1 Statement at ¶ 34.)

CPA mailed Delmoral the third collection letter, dated January 23, 2012 (the "January 23 Letter"), on or about January 25, 2012. (Pl.'s Rule 56.1 Statement at ¶¶ 20, 26; Def.'s Rule 56.1 Statement at ¶¶ 20, 26.) The front of that letter contained, in part, the following language:

> Be advised that the thirty (30) day validation period discussed in our first letter concerning the validity of your debt will pass within the next three (3) weeks. If you do not seek validation, we will assume that your debt is valid at the end of that period.

(the "Three-Week Language") (January 23 Letter (Doc. No. 1-1 at 7) at 8 (ECF Pagination); Pl.'s Rule 56.1 Statement at ¶¶ 21–22; Def.'s Rule 56.1 Statement at ¶¶ 21–22.) The back of the January 23 Letter contained a validation notice identical to the one found on the December 15 Letter. (January 23 Letter at 8–9; Pl.'s Rule 56.1 Statement at ¶¶ 23–24; Def.'s Rule 56.1 Statement at ¶¶ 23–24.) Delmoral asserts that he received the January 23 Letter on or about January 31, 2012, which CPA challenges on the basis that it ordered that the letter be sent on January 23, 2012. (*Compare* Pl.'s Rule 56.1 Statement at ¶ 27, *with* Def.'s Rule 56.1 Statement at ¶ 27.) Each of the three collection letters contains an instruction on the front toward the

3

bottom stating: "**Please see reverse side for important information!**" (December 15 Letter at 2; Partial Payment Letter at 5; January 23 Letter at 8; Pl.'s Rule 56.1 Statement at ¶¶ 23–24; Def.'s Rule 56.1 Statement at ¶¶ 23–24.)

CPA maintains that it sent the January 23 Letter more than thirty days after the December 15 Letter by mistake. (Def.'s 56.1 Statement at ¶ 40.) It claims that its policy is to send an initial letter (the "Initial Letter") in the form of the December 15 Letter, and then send a second letter (the "Second Letter") twenty-one days later in the form of the January 23 Letter, and that this was the "collection strategy" programed into Delmoral's account. (*Id.* at ¶¶ 35, 39.) According to CPA, "if the program associated with the strategy on plaintiff's account had been followed, the Second Letter would have been sent 21 days after the Initial Letter." (*Id.* at ¶ 40.) CPA attributes the mistake to various causes. It claims that when Delmoral made the $200 payment it placed his account on hold, but because Delmoral subsequently returned certain equipment it automatically, unintentionally, and without human direction triggered the collection strategy to resume, and as a result, the Second Letter in the strategy was sent to the plaintiff. (*Id.* at ¶¶ 37–38.)[1] Delmoral disputes these assertions, stating he returned the equipment before he made the $200 payment, and that "CPA had no policy regarding the timing of the second letter." (Pl.'s 56.1 Counter-Statement (Doc. No. 50) at ¶¶ 34, 35, 37, 40.)

2. **Delmoral's FDCPA Claims**

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection

---

[1] CPA alternatively explains the mistake in its opposition to Delmoral's motion as "an unknown and unintended programming error, coupled with Plaintiff's payments, equipment return, and delays in mailing associated with the holidays," and later states that the Second Letter "was not sent as programmed, to the best of CPA's knowledge, due to mailing disruptions due to the holidays." (Def.'s Mem. Opp'n Summ. J. (Doc. No. 46) at 2–3.)

4

practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). One of the protections that the FDCPA established is the requirement that debt collectors provide consumers with a validation notice as prescribed in § 1692g. Section 1692g(a) states that within five days of the initial communication with a consumer in connection with the collection of any debt, the debt collector must provide the consumer with a written notice containing:

    (1)    the amount of the debt;

    (2)    the name of the creditor to whom the debt is owed;

    (3)    a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

    (4)    a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

    (5)    a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

In addition, § 1692g(b) prohibits any activities or communications during the thirty-day validation period that "overshadow or [are] inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." *See generally Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) ("A notice is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights.").

    Delmoral does not dispute the adequacy of the validation notices contained in the December 15 Letter or the January 23 Letter, or object to any of CPA's conduct in the thirty-day validation period following the December 15 Letter. Instead, Delmoral maintains that, by the

time CPA mailed the January 23 Letter, the initial validation period following the December 15 Letter had expired, and that the January 23 Letter therefore granted Delmoral a new validation period of thirty days. (Compl. at ¶ 28–31.) Delmoral's first cause of action[2] therefore alleges that the Three-Week Language on the front of the January 23 Letter violated § 1692g(b), because it incorrectly stated that the new validation period would lapse within three weeks, not thirty days. (*Id.* at ¶¶ 37–41.) For the same reason, Delmoral alleges that the Three-Week Language violated § 1692e, which prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and § 1692e(2)(A), which prohibits "false representation of . . . the character, amount, or legal status of any debt . . . ." (*Id.* at ¶¶ 42–43.)

In support of class certification, Delmoral asserts that the January 23 Letter is a "mass computer-generated form notice, on which only the individual class members' personal information, such as their names, addresses and amount of debt varies." (Pl.'s Mem. Supp. Class Certif. & Summ. J. (Doc. No. 36) at 2.) He seeks to certify a class of all persons who were sent a letter by CPA containing both the Three-Week Language and a validation notice. (*Id.*) Specifically, Delmoral proposes the following class definition:

> All natural persons residing in New York State to whom defendant sent a letter in an attempt to collect a consumer debt on behalf of Time Warner of New York City within the period from January 16, 2012 to and including January 15, 2013 which letter was in substantially the same form as Exhibit 3 to the Complaint [the January 23, 2012 letter], and which letter states, in sum or substance:
>
> Be advised that the thirty (30) day validation period discussed in our first letter concerning the validity of your debt will pass within the next three (3) weeks. If you do not seek validation, we will assume that your debt is valid at the end of that period.

(*Id.* at 1.)

---

[2] Delmoral has withdrawn his second cause of action, which also alleged violations of §§ 1692e, 1692e(2)(A), and 1692g, based on the portion of the Three-Week Language that stated "If you do not seek validation, we will assume that your debt is valid at the end of that period." (Pl.'s Mem. Supp. Class Certif. & Summ. J. (Doc. No. 36) at 35 n.1; Compl. at ¶ 45.)

**DISCUSSION**

1. **Class Certification**

    a. **Legal Standard**

Class actions were designed to be "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). An appropriately composed class "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Id.* (quoting *Califano*, 442 U.S. at 701) (alteration in original).

Federal Rule of Civil Procedure 23(a) puts forth four threshold requirements for the certification of a class: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"), (2) commonality ("there are questions of law or fact common to the class"), (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). If a court determines that those requirements are met, it must then consider whether the proposed class action is appropriate under Rule 23(b). In this case, Delmoral has moved for class certification under Rule 23(b)(3), which states that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

In determining whether the Rule 23 requirements have been met, "a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement . . . ." In re *Initial Pub.*

*Offerings Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). That said, class certification often involves considerations "that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," *Falcon*, 457 U.S. at 160 (internal quotation marks omitted), and the court must make a "definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues." In re *Initial Pub. Offerings Secs. Litig.*, 471 F.3d at 41. A party seeking class certification must establish by a preponderance of the evidence that the criteria for class certification are satisfied.[3] *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); *Read-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) ("The burden for establishing the criteria for class certification is on the party seeking that certification."). Because the Court finds that Delmoral's motion for class certification fails under the commonality and typicality prongs, it does not address the other requirements under Rule 23.

### b. Rule 23(a)(2)(3) – Commonality and Typicality

In practice, the commonality and typicality requirements tend to merge. *See Falcon*, 457 U.S. at 157 n.13; *Marisol A.*, 126 F.3d at 376. Commonality under Rule 23(a)(2) requires a "showing that common issues of fact or law exist and that they affect all class members." *Leone v. Ashwood Fin., Inc.*, 257 F.R.D. 343, 351 (E.D.N.Y. 2009). However, "[a]ny competently crafted class complaint literally raises common questions." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–32 (2009)) (internal quotation marks omitted). Commonality thus requires the plaintiff to demonstrate that the class members have suffered the same injury, not merely that they raise common questions or even that they have all suffered a violation of the

---

[3] "To establish by a preponderance of the evidence means very simply to prove that something is more likely so than not so." *Duke Labs., Inc. v. United States*, 222 F. Supp. 400, 406 (2d Cir. 1963).

same provision of law. *Id.* (citing *Falcon*, at 157). "Their claims must depend upon a common contention[, which] must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Typicality under Rule 23(a)(3) "requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Marisol A.*, 126 F.3d at 376 (quoting In re *Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). The purpose of this requirement is to "ensure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 337 (E.D.N.Y. 2013).

Courts have found that commonality and typicality are not satisfied in the FDCPA context where a plaintiff's cause of action is premised upon sequencing errors. *See, e.g.*, *Vu v. Diversified Collection Servs., Inc.*, 293 F.R.D. 343, 353 (E.D.N.Y. 2013) (denying a proposed class because "[f]or each class member, the court will be required to determine what contact with Defendant constitutes the 'initial communication' (a legal question) and when the initial communication took place (a factual question)"); *cf. Hughes v. WinCo Foods*, No. 11-CV-644 (JAK) (OPx), 2012 WL 34483, at *5 (C.D. Cal. 2012) (finding commonality not met where "[t]here is simply no manner in which the timing of [the relevant facts] can be proven reliably with evidence of 'a single stroke.'"). It is for this reason that Delmoral's proposed class fails.

His claims stem entirely from the January 23 Letter, and alleges that the January 23 Letter in and of itself violates §§ 1692e and 1692g of the FDCPA. Delmoral's complaint expressly acknowledges "[t]hat by the time defendant mailed [the January 23 Letter] to plaintiff

9

on or about January 25, 2012, the thirty-day validation period described by defendant in [the December 15 Letter] had already expired." (Compl. at ¶ 28.) Furthermore, Delmoral insists that the January 23 Letter must be interpreted independently from the December 15 Letter. (*See, e.g.*, *id.* at ¶ 33 ("[T]he [Three-Week Language] was not referring to the validation period in [the December 15 Letter].").) In short, Delmoral has made clear that his causes of action stem entirely from the January 23 Letter, that they are in no way premised upon CPA's conduct during the validation period following the December 15 Letter, and that, in light of the fact that Delmoral received the January 23 Letter after the initial validation period had expired, certain interpretations of the January 23 Letter are warranted.

Delmoral's construction of his claims cannot be maintained across the entire class. Both the legal and factual analyses of how to interpret the Second Letter and whether § 1692g was violated will necessarily be different depending on when the Second Letter was received, because Delmoral's cause of action under § 1692g is premised upon the creation of a new validation period after the initial thirty-day validation period had already expired. A consumer who received the Second Letter within the initial validation period may also have a plausible cause of action under § 1692g based on the overshadowing of the initial validation notice, a claim which does not accrue to Delmoral. Similar considerations apply to Delmoral's claims under § 1692e, which are wholly premised upon the creation of a new validation period after the expiration of the first. Even assuming that Delmoral has also pled a cause of action under § 1692e with respect to the initial validation period, that analysis will necessarily be different depending on when the consumer received the Three-Week Language, because the timing of the Second Letter would affect the amount of time, if any, remaining in the initial validation period

and thus whether, and if so, the manner in which the Three-Week Language was in fact deceptive or misleading.

For these reasons, each proposed class member's claim would require an individualized determination of exactly when he or she received the First Letter and the Second Letter, the impracticality of which is readily apparent. Even in this case, Delmoral and CPA have disputed the fine details of the timing of their interactions at almost every step. They dispute when Delmoral received the December 15 Letter, when Delmoral received the January 23 Letter, and even whether he returned the equipment before or after he made his $200 payment. These issues bear on whether a representation is deceptive or misleading, and make claims related to the Second Letter difficult to address without an individualized assessment of the facts. Thus, Delmoral's cause of action is thus not amenable to class certification. *See Felix v. Northstar Location Servs.*, 290 F.R.D. 397, 404 (W.D.N.Y. 2013) (finding commonality and typicality not met where class proposal would require "mini-hearings . . . to determine if the proposed class members had experienced a similar set of circumstances as the named plaintiffs.") (internal quotation marks and alterations omitted).

Delmoral's claims are also atypical in light of CPA's bona fide error defense. CPA states that it is entitled to the defense because "the sending of the Second Letter outside the normal letter campaign was unintentional, and therefore any violation resulting from that sequence was also unintentional." (Def.'s Mem. Opp'n Summ. J. (Doc. No. 46) at 19.) A debt collector may escape liability if it satisfies the bona fide error defense under § 1692k, which states that "[a] debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably

adapted to avoid any such error." *See Russell*, 74 F.3d at 33–34 (citing § 1692k). Because CPA maintains that it sent the January 23 Letter outside of the initial validation period by mistake, its defense would apply differently to Delmoral than to members of the proposed class that received the Second Letter as intended during the initial validation period.

For these reasons, Delmoral's proposed class fails to satisfy the commonality and typicality requirements under Rule 23, and the motion to certify class is denied.[4]

2. **Summary Judgment**

   a. **Legal Standard**

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); see also *Brosseau v. Haugen*, 543 U.S. 194, 195 n.1 (2004). Nevertheless, once

---

[4] A court may redefine a proposed class *sua sponte* where not unduly burdensome. Fed. R. Civ. P. 23(c)(4); *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). In Robidoux, the plaintiffs had asserted causes of action under "three well-defined public assistance programs," two of which the appellate court found were suitable for class certification. *Robidoux*, 987 F.2d at 937. Here, reconstructing a class would require the parties to engage in discovery and a fact-intensive inquiry to identify and untangle the potential class members as well as their interrelated and overlapping claims. Delmoral has repeatedly insisted on the class as proposed and has not suggested any potential alternative formulations. The Court declines to engage in that exercise on his behalf. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 408 (1980) ("That burden [of constructing subclasses] is upon the respondent and it is he who is required to submit proposals to the court. The court has no sua sponte obligation so to act."); *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14–15 (2d Cir. 1993) (citing *Geraghty*); Charles Alan Wright et al., Federal Practice & Procedure § 1790 (3d ed. 2015) (same).

the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal citations omitted). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

In the Second Circuit, violations of the FDCPA are assessed under the "least sophisticated consumer" standard, described as referring to someone who does "not hav[e] the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer . . . ." *Jacobson v. Healthcare Fin. Servs.*, 516, F.3d 85, 90 (2d Cir. 2008) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)); *Russell*, 74 F.3d at 34. This is an objective standard, meaning the Court need not consider Delmoral's specific circumstances, nor assess whether he was, in fact, confused by CPA's letters. *See Easterling v. Collecto*, Inc., 692 F.3d 229, 234 (2d Cir. 2012) ("By its very nature . . . the least sophisticated consumer test

pays no attention to the circumstances of the particular debtor in question . . . .") (citing *Clomon at* 1318).

### b. Standing

As a threshold matter, CPA contends that Delmoral lacks standing to bring the instant cause of action, arguing that he seeks solely statutory damages and has failed to allege any personal injury. (Def.'s Mem. Supp. Summ. J. (Doc. No. 43) at 8 (citations omitted).) But CPA's insistence that Delmoral point to personalized injury misconstrues the law. A consumer who receives communications in violation of the FDCPA has standing to seek statutory damages without the need to point to an actual injury. *See Miller v. Wolpoff & Abramson, L.P.*, 321 F.3d 292, 307 (2d Cir. 2003) ("The FDCPA provides for liability for attempting to collect an unlawful debt . . . and permits the recovery of statutory damages up to $1,000 in the absence of actual damages. Thus, courts have held that actual damages are not required for standing under the FDCPA."); *Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239, 248 (E.D.N.Y. 2012) ("Statutory damages are available for every consumer who has suffered a violation of FDCPA § 1692e(11), regardless of whether they were actually injured or not."); *cf. Gambardella v. G. Fox & Co.*, 716 F.2d 104, 108 n.4 (2d Cir. 1983) ("It is well settled . . . that proof of actual deception or damages is unnecessary to a recovery of statutory damages under [the Truth in Lending Act]."). As explained by the court in *Ehrich v. I.C. Sys., Inc.*:

> [P]laintiffs do in fact have standing because the FDCPA broadens the traditional "injury in fact" analysis by expanding the range and scope of injuries that create constitutional standing. Specifically, the FDCPA allows a plaintiff to recover statutory damages despite the absence of actual damages; in other words, the "injury in fact" analysis is directly linked to the question of whether plaintiff has suffered a cognizable statutory injury and not whether a plaintiff has suffered actual damages.

14

681 F. Supp. 2d 265, 269–70 (E.D.N.Y. 2010) (internal citation omitted) (citing *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1212 (10th Cir. 2006)). Accordingly, the Court finds that Delmoral has standing to assert a cause of action under the FDCPA.

      c. **Section 1692g**

Delmoral does not dispute that the validation notice in the December 15 Letter properly set forth his rights under § 1692g, nor does he allege that there was any communication within the subsequent thirty-day period that "overshadowed or contradicted" those rights. Instead, Delmoral maintains that the January 23 Letter, which was sent after the initial validation period had already expired, created a new thirty-day validation period, and that the Three-Week Language on the front of the January 23 Letter overshadowed and contradicted the validation notice on the back. He acknowledges that the concept of multiple validation periods presents "a matter of first impression," but argues that "there is no material difference between a first validation notice and subsequent validation notice [sic] which states that it confers FDCPA rights." (Pl.'s Reply Class Certif. & Summ. J. (Doc. No. 49) at 32.) The Court disagrees for several reasons.

The thirty-day validation period under § 1692g, though running from the date that the debt collector provides the debtor with notice of its validation rights, is created by statute, not by the notice itself. Delmoral cites no authority for the proposition that a new thirty-day validation period can be created by a communication from a debt collector, much less for the proposition that any such period, although not contemplated by the statute, would nonetheless otherwise be strictly subject to all of its provisions. Furthermore, this proposed interpretation is in tension with the plain language of the statute itself, which appears to contemplate the creation of a single validation period. *See* § 1692g(a) ("Within five days after *the initial* communication with a

consumer . . . *the* notice . . . *the* thirty-day period . . . ."). Indeed, if a validation notice sent after the initial validation period could in fact create a new validation period, the subsequent validation notice would always violate § 1692g(a), as it would not have been sent within five days of the initial communication. Finally, there is no reason to believe that multiple validation periods are necessary in order to give effect to the statute's purpose. As explained by the Senate Report accompanying the enactment of the FDCPA, the purpose of § 1692g was to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid," an objective which was satisfied when CPA properly provided Delmoral with a validation notice in the December 15 Letter. *See* S. Rep. No. 95-382, at 4 (1977).

Thus, a validation notice sent after the initial thirty-day period contemplated by § 1692g – regardless of what rights it might create between the debt collector and the consumer in contract, equity, or otherwise – does not establish a new statutory thirty-day period. Because no new validation period was created, the Three-Week Language could not have overshadowed or contradicted it. Summary judgment is awarded to CPA to the extent it alleges violation of § 1692g.

### d. Section 1692e / CPA's Bona Fide Error Defense

As discussed above, Delmoral alleges that the Three-Week Language in the January 23 Letter also violated §§ 1692e and 1692e(2)(A). (Compl. at ¶¶ 42–43.) Section § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt," while § 1692e(2)(A) specifically prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt . . . ." Although not provided in the text of the statute, several circuits have also read a materiality requirement into

16

§ 1692e. The Second Circuit has not expressly adopted this requirement, but it has cited several such cases with approval. *See Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012). In *Gabriele*, the court suggested that materiality was satisfied by "communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection . . . ." *Gabriele*, 503 F. App'x at 94; *see also Lauthman v. 2800 Coyle St. Owners Corp.*, No. 14-CV-1868 (ARR) (VVP), 2014 WL 4843947, at *11 (E.D.N.Y. Sept. 26, 2014) ("Statements are material if they influence a consumer's decision to pay a debt or if they would impair the consumer's ability to challenge the debt." (quoting *Hasbrouck v. Arrow Fin. Servs. LLC*, No. 09–CV–748 (MAD) (RFT), 2011 WL 1899250, at *4 (N.D.N.Y. May 19, 2011)).

Delmoral's cause of action under §§ 1692e and 1692e(2)(A) is again premised upon the creation of a new validation period, and thus fails for the same reasons as his cause of action under § 1692g. (*See, e.g.*, Pl.'s Mem. Supp. Class Certif. & Summ. J. at 34 ("[I]f heeded, the three-week language would discourage Plaintiff from disputing the debt after February 21, 2012, thereby impeding his dispute rights."); Pl.'s Reply Class Certif. & Summ. J. at 35 ("Defendant's three week language would have effectively prevented him from disputing the debt during the last 10 days of the [new] validation period.")  However, assuming for the sake of argument that Delmoral's complaint can be read more broadly to allege that the Three-Week Language was materially deceptive in other ways, for example because it could lead a consumer to believe that he or she had up to three weeks remaining in the initial validation period when in fact that period had already expired, CPA may avail itself of the bona fide error defense.[5]

---

[5] The Court does not similarly consider whether the second validation notice was materially deceptive, because Delmoral's complaint clearly restricts its allegations regarding §§ 1692e and 1692e(2)(A) to the Three-Week Language. (See Compl. at ¶¶ 42–43.)

17

A debt collector may escape liability from an FDCPA violation if it satisfies the bona fide error defense under § 1692k, which states that "[a] debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *See Russell*, 74 F.3d at 33–34 (citing § 1692k). A debt collector attempting to invoke the defense "need not demonstrate that its procedures for avoiding [FDCPA] violations are 'fool proof,' but rather, must only show that its procedures constitute a 'reasonable precaution.'" *Puglisi v. Debt Recovery Sols., LLC*, 822 F. Supp. 2d 218, 228 (E.D.N.Y. 2011) (alteration in original) (quoting *Katz v. Asset Acceptance, LLC, Civil Action*, No. CV–05–2783 (DGT), 2006 WL 3483921, at *2 (E.D.N.Y. Nov. 30 2006) (citing *Kort v. Diversified Collection Servs. Inc.*, 394 F.3d 530, 539 (7th Cir. 2005))).

CPA asserts that the January 23 Letter was supposed to have been sent twenty-one days after the December 15 Letter, and sets forth various explanations for the error, including Delmoral's return of the equipment and "mailing disruptions associated with the holidays." (*See* Def.'s 56.1 Statement at ¶ 40; Def.'s Mem. Supp. Summ. J. at 3.) Delmoral contests these assertions through a conclusory allegation, arguing simply that the "record evidence cited . . . does not support the statements." (Pl.'s Resp. Def.'s 56.1 Statement at ¶ 39.)

But CPA does provide support for these statements, in the form of an Affidavit from Lisa Duan, its Vice President of Client Operations. (*See* Lisa Duan Affidavit (Doc. No. 42) at ¶ 2.) In that document, she explains that "CPA regularly and routinely monitors and reviews its collection campaigns, including the sequence and content of the letters being automatically generated." (*Id.* at ¶ 16.) "CPA's policy is to send the Second Letter between 14 and 21 days

after the Initial Letter," depending on "various factors, including for example the success of the phone calls . . . ." (*Id.* at ¶ 8, 14.) Once a customer makes a partial payment, the program is "designed to place an account on a wait hold for 30 days . . . in order to allow for additional payments or returned equipment to process." (*Id.* at ¶ 11.)

In this case, Duan asserts that "CPA did not intentionally send the Second Letter to the plaintiff on January 23, 2012." (*Id.* at ¶ 8, 14–15.) "The return of the equipment should have automatically sent another letter in the form of the Partial Payment Letter. To the best of CPA's knowledge, an unknown and unintended error in the program automatically sent the Second Letter on January 23, 2012, instead of a Partial Payment Letter." (*Id.* at ¶ 13.) According to Duan, "[i]f the program associated with the campaign strategy on plaintiff's account had been uninterrupted and correctly followed, the Second Letter would have been sent approximately 14 to 21 days after the Initial Letter." (*Id.* at ¶ 15.) However, "[n]otwithstanding [CPA's] routine and regular monitoring and review activities, it did not learn of this programming error, in part because of the fact that this campaign is unique to Time Warner of New York City." (*Id.* at ¶ 16.)

In light of these sworn statements, it is insufficient for Delmoral to simply assert without citing to any witness testimony or other evidence that "CPA had no policy regarding the timing of the second letter[, because] CPA did not send the second letter to DelMoral until more than a month after it sent the first letter." (Pl.'s Resp. Def.'s 56.1 Statement at ¶¶ 35, 40); *see Puglisi*, 822 F. Supp. 2d at 228 ("Courts have granted summary judgment based on the bona fide error defense when defendants have come forward with evidence [of internal policies] and where plaintiff has made no effort to refute that evidence.") (gathering cases). Thus, construing the facts in the light most favorable to Delmoral, the uncontroverted evidence presented by CPA

19

establishes by a preponderance of the evidence the bona fide error defense.  CPA has established that it sent the January 23 Letter more than twenty-one days after the December 15 Letter by mistake, notwithstanding procedures reasonably adapted to avoid such error.  Had the January 23 Letter been sent as intended, the Three-Week Language would not have been materially deceptive or misleading, and thus not violative of the FDCPA.  Summary judgment is therefore granted to CPA as to violations of §§ 1692e and 1692e(2)(A).

## CONCLUSION

For the reasons set forth above, Delmoral's motions for class certification and summary judgment are DENIED and CPA's motion for summary judgment is GRANTED.  The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

SO ORDERED.

Dated: Brooklyn, New York
September 30 2015

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge